539 So.2d 97 (1989)
PARISH OF JEFFERSON
v.
Honorable Charles E. ROEMER et al.
No. 88-CA-648.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1989.
Writ Denied April 14, 1989.
*98 Louis G. Gruntz, Jr., Harahan, for plaintiff-appellant.
Dale C. Wilks, New Orleans, Charles L. Patin, Jr., Baton Rouge, William King, Covington, for defendants-appellees.
Before CHEHARDY, BOWES and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an appeal from a declaratory judgment upholding the constitutionality of Act 875 of the 1988 Regular Session of the Louisiana Legislature. The contested portion of the act changes the manner in which the members of the Greater New Orleans Expressway Commission (GNOEC) are appointed. Jefferson Parish, plaintiff-appellant, alleges two constitutional defects in the statute. First, it contends that the legislation interferes with the parish home rule charter, in violation of Louisiana Constitution (1974), Article VI, secs. 4 and 6. Second, it urges that the statute is a "local or special law", which must have been advertised twice in the local official journal before passage, and that because no such advertisements were published, the act violates Louisiana Constitution (1974), Article III, sec. 13. Because we find that neither assertion has merit, we affirm the trial court's judgment declaring the act valid.
We note initially that statutes are presumed constitutional, and that judicial self-restraint is appropriate when statutes are under attack, Sherman v. Cabildo Construction Co., 490 So.2d 1386 (La.1986). Further, in such cases the opponent bears the burden of proving that the statute is defective, City of Lake Charles v. Chaney, 468 So.2d 1191 (La.1985).
In the present case, appellant first urges that Act 875 is unconstitutional because it interferes with the home rule charter of the parish in contravention of La.Constitution (1974) Art. VI, 4 and 6, which provide as follows:
§ 4. Existing Home Rule Charters and Plans of Government
Section 4. Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
§ 6. Home Rule Charter or Plan of Government; Action by Legislature Prohibited
Section 6. The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
The Parish asserts that appointment of members of the GNOEC is a power within its home rule charter, and that the act affects the distribution of this power. We find, however, that this appointive power is not one within the existing home rule charter, and further that the law enabling the parish to enact this charter would have precluded inclusion of this power within the charter.
The Jefferson Parish Home Rule Charter was enacted under the authority of La. Const. (1921), art. 14, § 3(c) (acts 1956, NO. 631, adopted Nov. 6, 1956). The introduction to this act provides that:
Section 3(c). The people of Jefferson Parish shall have the power to establish, *99 in the manner hereinafter provided, government for the Parish and the several municipal corporations and other political subdivisions and districts situated therein. (emphasis added)
Section 3(c)(2) further provides that:
(2) Plan of Government. Subject to the provisions of the Constitution and laws of this State with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions among the several units of local government within the Parish, such plan of government may provide, among other things. (emphasis added)
It is this court's interpretation of these provisions that any charter enacted by the parish could only relate to governmental structure, organization and distribution of powers within the parish, and not to the powers originally granted to the GNOEC, and especially those powers as enlarged by subsequent legislation which affects several other parishes, dedicates state funds to secure additional bonds, and involves management of additional parts of the State Highway System.
We so conclude because of the original nature of the GNOEC, and the subsequent enlargement of its powers by Legislative action.
In 1952, La. Const. (1921) Art. VI, sec. 22(g) was amended to provide for construction of the Causeway and other highway projects. The amendment created State Highway Fund No. 2, into which all vehicular license taxes collected in the parishes of Orleans, Jefferson, St. John the Baptist, St. Charles, Tangipahoa, and St. Tammany were to be deposited, and dedicated a portion of the Fund to pay certain development costs, and principal and interest on bonds sold to finance the Causeway. It further provided that the Causeway was to be a part of the State Highway System, and that its purpose was to secure the development of the State of Louisiana. Although the parishes of Jefferson and St. Tammany were granted the right to construct, operate and maintain the bridge, the amendment also provided that when the bonds are repaid in full, the bridge shall become the property of the State. Finally, it provided that Fund No. 2 money would be used by the State Department of Highways to construct approach roads which would be ready for use upon completion of the Causeway, and which would be maintained by the Department as part of the State Highway System. Exercising this grant of power, the two parishes established the GNOEC in conformity with La.R. S. 33:1321, et seq., "The Local Services Law", and the Causeway was constructed.
In 1986, by Act 762, the powers of the Commission were expanded by the Legislature. Under its original grant of power, the Commission was authorized to issue bonds only for construction of the bridge itself; all approach roads were to be built and maintained by the State. Act 762, enlarged this authority by permitting the Commission to issue an additional forty-nine million dollars of bonds to construct various access roads, which prior to this act were the State's responsibility. It continued in effect the dedication of Fund No. 2 money, collected from several surrounding parishes, to payment of the new bonds, and changed the manner of appointment of Commission members. In 1988, Act 762 (1986) was amended to provide yet another manner of appointment, and re-enacted as Act 875 (1988). This is the legislation under attack here.
The Parish of Jefferson argues that its power to appoint Commissioners has been unconstitutionally changed by the State. It is silent as to those provisions of Acts 762 and 875, which enlarged the powers of the Commission and authorized the sale of additional bonds for construction of access roads. Neither does it argue that the Commission could have expanded its own powers to construct access roads, issue bonds for this purpose, or dedicate license fees from surrounding parishes in Highway Fund No. 2, to secure these bonds. Under the provisions of the original constitutional grant of authority, neither the Commission, nor the governing authorities of Jefferson and St. Tammany Parishes, could have so *100 enlarged its powers over access roads, sold bonds for this unauthorized purpose, or committed money from Fund No. 2, to service such bonds. The Local Services Law, La.R.S. 33:1324, under which the GNOEC was established, provides that at least one of the participants to an inter-parish agreement must be authorized under a general or special law "to perform such activity or exercise such power as may be necessary for completion of the undertaking", before an inter-governmental entity may be established. Thus, from its inception, the powers of the GNOEC were limited to those enumerated in La. Const. (1921), Art. VI, sec. 22(g), and neither the Commission nor the parishes could have enlarged these powers. Only the Legislature could do so. When it did so enlarge these powers by Act 762 (1986) and Act 875 (1988) it further provided for a different manner of appointment of members of the Commission than that previously in effect. It is apparent to this court that this legislation is within the Legislature's power to act, and does not impermissibly interfere with the Jefferson Parish Home Rule Charter. It is simply a reauthorization and expansion of the bi-parish Commission's powers, and as such is now the basis of the continued existence of the GNOEC as an interparish entity under the enabling provisions of La.R.S. 33:1324. We thus hold that the Parish has failed to meet its burden of showing that the statute is a violation of La. Const. (1974), Art. VI, secs. 4 and 6.
The second argument made by the Parish is that the statute is defective because it was not properly advertised before passage, as required for "local or special laws" by La. Const. (1974) Art. III, sec. 13. We reject this assertion as well. In Davenport v. Hardy, 349 So.2d 858 (La.1977), the court stated that:
A law is not local or special, even though its enforcement may be restricted to a particular locality, simply because the conditions under which it operates do not prevail in every locality.
It further quoted with approval the holding of Teachers' Retirement System of Louisiana v. Vial, 317 So.2d 179 (La.1975), where it was held that:
In essence, a special law is one directed to secure some private advantage or advancement for the benefit of private persons (at 183).
In the present case, there are simply no private interests involved. The Parish asserts, nonetheless, that because the legislation affects only two parishes, it is necessarily a local or special law. However, this proposition has consistently been rejected by the courts. See Davenport v. Hardy supra, and cases cited therein. We therefore hold that the legislation at issue here is not a local or special law for purposes of La. Const. (1974) Art. III, sec. 13, and therefore no local publication of this law was required prior to its enactment.
For the above reasons, we affirm the judgment of the trial court declaring Act 875 (1988) to be constitutional.
AFFIRMED.